### In re BAYCOL PRODUCTS LITIGATION.

### No. MDL 1431 (MJD/JGL).

United States District Court, D. Minnesota.

Dec. 12, 2003.

Hugh V. Plunkett, Richard A. Lockridge, Robert K. Shelquist, Yvonne M. Flaherty, Lockridge Grindal Nauen, Mpls., MN, Shawn M. Raiter, Deanna D. Dailey, Larson King, LLP, St. Paul, MN, Charles Zimmerman, Zimmerman Reed, LLP, Mpls., MN, for Plaintiffs.

Peter W. Sipkins, Elizabeth S. Wright, Dorsey & Whitney, Mpls., MN, Philip S. Beck, Adam L. Hoeflich, Andrew L. Goldman, Tarek Ismail, Bartlit, Beck, Herman, Palenchar & Scott, Chicago, IL, Fred T. Magaziner, Kathryn L. Connelly, Halimah D. DeLaine, W. Mark Weidemaier, Dechert, Price & Rhoads, Philadelphia, PA, for Defendants.

### PRETRIAL ORDER NO. 98

DAVIS, District Judge.

This matter is before the Court upon Defendants' Motion to Conduct Informal *Ex Parte* Interviews of Plaintiffs' Treating Physicians. The Parties have filed briefs, and the Court heard oral argument on this issue at the November 3, 2003 Status Conference.

### I. BACKGROUND

This motion arises in the context of a multi-district litigation ("MDL") involving al-leged injuries suffered as a result of taking the prescription drug Baycol. Baycol was prescribed to lower the lipid levels of individuals with high cholesterol. In August 2001, Baycol was removed from the market after thirty-one deaths in the United States were linked to Baycol use. Plaintiffs in this MDL were either prescribed Baycol or represent the interests of individuals who were prescribed Baycol. Plaintiffs have all signed releases, giving Defendants access to their medical records. However, Defendants argue that in order to provide a "level playing field" (Nov. 3, 2003 Status Conf. Tr. at 25), they also need to conduct *ex parte* interviews of Plaintiffs' physicians. Specifically, Defendants assert that if Plaintiffs have unfettered access to their physicians prior to formal depositions, Plaintiffs will have the unfair advantage of "present[ing] their view of the case to the treating physicians, potentially unjustifiably biasing them against defendants in advance of deposition, all without the fear of directly disclosing their mental impressions and case strategy." (Def. Mem. Supp. Mot. at 8.) Defendants aver that Plaintiffs have waived the physician-patient privilege, and therefore Plaintiffs' physicians are merely ordinary fact witnesses whom Defendants should be allowed to interview. In the alternative, Defendants seek to amend PTO 96 to allow discovery depositions of Plaintiffs' physicians prior to conducting trial depositions.

### II. DISCUSSION

#### A. *Legal Standard*

■ There is no physician-patient privilege in federal diversity actions. *See Filz v. Mayo Found.*, 136 F.R.D. 165, 167 (D.Minn. 1991) (citations omitted). Therefore, for federal cases based on diversity jurisdiction, state law controls the existence and scope of the physician-patient privilege. *See id.; Lind v. Canada Dry Corp.*, 283 F.Supp. 861, 865 (D.Minn.1968) (addressing the scope of waiver of physician-patient privilege). Under Minnesota law, physician-patient privilege is governed by Minn.Stat. § 595.02 which states, in pertinent part:

[Subd.] 1.

(d) A licensed physician or surgeon ... shall not, without consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity.

\*  \*  \*  \*  \*  \*

Subd. 5.

A party who commences an action for malpractice, error, mistake, failure to cure, whether based on contract or tort, against a health care provider ... waives in that action any privilege existing ... as to any information or opinion in the possession of a health care provider who has examined or cared for the party or other person whose health or medical condition has been placed in controversy in the action. This waiver must permit all parties to the action, and their attorneys or authorized representatives, to informally discuss the information or opinion with the health care provider if the provider consents. Prior to an informal discussion with a health care provider, the defendant must mail written notice to the other party at least 15 days before the discussion. The plaintiff's attorney or authorized representative must have the opportunity to be present at the informal discussion.

Minn.Stat. § 595.02 subd. 1(d), 5.

■ When a party places his or her medical condition at issue, the physician-patient privilege is waived to the extent provided by Minn. R. Civ. P. 35.03, and limited by Minn. R. Civ. P. 35.04. Rule 35.04 provides that medical records must be produced, but does not mention *ex parte* interviews of treating physicians. In addition, Rule 35.04 states that depositions of treating physicians are only allowed upon court order for good cause shown.

**B.  *The Parameters of State Privilege Law***

■ The Court finds that, on its face, the scope of Minnesota privilege law does not allow the *ex parte* communications Defendants desire. Minn.Stat. § 595.02 is clear: without Plaintiffs' consent, their treating physicians may not disclose *any* information. Since Plaintiffs have put their medical conditions in controversy, Plaintiffs have executed waivers in which they allow Defendants access their medical records, nothing more. These waivers comport with Rule 35.04. Defendants argue that "there can be no claim that the physician/patient privilege has not been waived. Thus, plaintiffs' physicians should be treated as any other fact witnesses, and defendants should have the right to interview willing physicians." (Def. Mem. Supp. Mot. at 7.) The Court finds this argument misplaced. The truth is that "there can be no claim that the physician-patient privilege has not been waived *only to the extent outlined in Minn. R. Civ. P. 35.04.*" Plaintiffs executed limited waivers which comport with state law. *See Younggren v. Younggren,* 556 N.W.2d 228, 233 (Minn.Ct. App.1996) (stating that a waiver pursuant to Rule 35.04 only allows opposing party access to medical records). Plaintiffs were not required to do any more than that and, under the facts of this case, the Court does not find that justice requires that Plaintiffs execute more expansive waivers.

In *Wenninger v. Muesing,* 307 Minn. 405, 240 N.W.2d 333 (1976), the Minnesota Supreme Court stated that Minnesota's limited physician-patient privilege waiver rules exist for the following reasons:

The policy underlying Rule 35.03 is the full disclosure of all relevant medical evidence concerning plaintiff's health when he voluntarily puts his health in issue by bringing a lawsuit.... The procedure defined in Rule 35.04 protects both the patient and his physician from the danger that adverse counsel may abuse his opportunity to interrogate the physician by privately inquiring into facts or opinions about the patient's mental and physical health or history which may neither be relevant to the patient's lawsuit nor lead to the discovery of admissible evidence. In a formal deposition pursuant to Rule 35.04, the presence of a patient's counsel ... assure[s] that clearly irrelevant medi-

cal testimony will not be elicited. Private, nonadversary interviews of the doctor by adverse counsel would offer no such protection to the patient's right of privacy. The presence of the patient's counsel at the doctor's interrogation permits the patient to know what his doctor's testimony is, allays a patient's fears that his doctor may be disclosing personal confidences, and thus helps preserve the complete trust between doctor and patient which is essential to the successful treatment of the patient's condition.

The presence of the patient's attorney during the doctor's examination also helps protect the doctor from unwittingly and improperly disclosing medical information about his patient. We note without deciding that a physician who discloses confidential information about his patient to another in a private interview may be subject to tort liability for breach of his patient's right to privacy or to professional discipline for unprofessional conduct. Under the procedure set forth in Rule 35.04, the physician may rely upon the patient's counsel to keep the questioning, and hence his answers, relevant to the matters properly at issue in the lawsuit. Except for the loss of a possible tactical advantage to defense counsel, no other reason has been suggested or occurs to us which would justify exposing doctors to the hazard of potential tort liability for unwarranted disclosures of confidential information in private, nonadversary interviews, and we thus conclude that on balance the procedure defined in Rule 35.04 should be the exclusive means for obtaining access to the medical testimony to which the patient has waived his privilege as required by Rule 35.03.

*Wenninger,* 240 N.W.2d at 336–37.

The Court agrees with this reasoning. Although *Wenninger* was a medical malpractice case, the Court does not find this distinction dispositive. Minnesota privilege law protects the physician-patient privilege in situations other than medical malpractice cases, *see Younggren,* 556 N.W.2d at 233 (addressing *ex parte* physician interview in case in which plaintiff sought accounting and rescission of actions taken under power of attorney), and it is the policy behind the law that the Court seeks to uphold. Minnesota law does not require that *ex parte* communications occur. Defendants only argument is that Plaintiffs will gain a tactical advantage, and the Court agrees with the Minnesota Supreme Court that this is not a proper reason to erode the physician-patient privilege.

The Court acknowledges that *Wenninger* was decided prior to enactment of Minn.Stat. § 595.02 subd. 5, and that the Minnesota Court of Appeals reasoned that subd. 5 was enacted as a as a way to allow "better access to information within possession of a plaintiff's treating doctor," and to clarify Minn. R. Civ. P. 35.04 in light of the limits established in *Wenninger. Blohm v. Minneapolis Urological Surgeons, P.A.,* 442 N.W.2d 812, 815 (Minn.Ct.App.1989), *rev'd on other grounds,* 449 N.W.2d 168 (Minn.1989). The Court does not find this fact relevant to the instant case because not even subd. 5 allows unfettered access to plaintiffs' physicians. In fact, absent patient permission, subd. 5, Minnesota's most liberal physician-patient privilege rule, mandates the presence of plaintiff's attorney during an interview. Therefore, Minnesota privilege rules do not require, or even allow, the kind of access contemplated by Defendants. Accordingly, the Court concludes that Minnesota privilege law does not require that Defendants be allowed to conduct *ex parte* physician interviews, and Defendants' motion must be denied on that basis.

#### C. *Erie Analysis*

The above analysis does not end the Court's inquiry. Defendants argue that Minn. R. Civ. P. 35.04 is procedural, and therefore, it does not apply to this case. According to Defendants, federal procedural laws apply which do not preclude the *ex parte* communications they desire.

While it is true that Rule 35.04 is found in the Minnesota Rules of Civil Procedure, it is also true that Rule 35.04 goes beyond most ordinary procedural rules because it is the only source which defines the parameters of the physician-patient privilege established by Minn.Stat. § 595.02. Regarding that statute,

the Court finds that subd. 5 does not apply to the instant case. Subd. 5, which permits defendants to conduct *ex parte* consensual interviews with physicians after providing plaintiff's counsel notice and the right to be present at the interview, applies only in medical malpractice cases. The instant case is not a medical malpractice action.

Thus, the Court is left to examine Minn. Stat. § 595.02 subd. 1(d) to determine if it applies in the instant case. To this end, the Court finds the court's analysis in *Gobuty v. Kavanagh*, 795 F.Supp. 281 (D.Minn.1992) instructive. In *Gobuty*, the court had to decide whether applying Minn.Stat. § 595.02 subd. 5 in a medical malpractice case venued in federal court because of diversity jurisdiction was proper under *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The *Gobuty* court, relying on *Kuehn v. Shelcore, Inc.*, 686 F.Supp. 233 (D.Minn.1988), stated the proper analysis for determining the role of state statutes in federal proceedings.

First, the court must determine whether the state statute directly conflicts with a federal rule of procedure on point. If so, the court must apply the federal rule so long as the rule is constitutional and within the scope of the Rules Enabling Act, 28 U.S.C. § 2072. If there is no direct conflict between the federal rule and the state statute, then the court must apply the *Erie* doctrine analysis.... "[T]hat analysis does not consist of a mere mechanical determination whether the state provision is 'procedural' or 'substantive' since even a so-called procedural provision can have such a substantial effect on the litigation as to require its application under Erie." *Kuehn*, 686 F.Supp. at 234. Rather, the Erie analysis has evolved into a broader inquiry: whether the variation between litigation with the state statute enforced and without it enforced "is substantial enough to raise equal protection problems or influence the choice of forum." *Id.* at 234 (citing *Walker [v. Armco Steel Corp.]*, 446 U.S. [740] at 753, 100 S.Ct. [1978] at 1986[, 64 L.Ed.2d 659 (1980)]; *Hanna*, 380 U.S. at 468, 85 S.Ct. at 1142). This variation need not mean the difference between full recovery and no recovery; even a non-dispositive variation which may significantly influence the choice of forum by providing a mere tactical advantage is sufficient reason to apply the state law in federal proceedings.

*Gobuty*, 795 F.Supp. at 287–88 (most internal citations omitted). In adopting the *Kuehn* analysis, the *Gobuty* court rejected the analysis applied in *Filz v. Mayo Found.*, 136 F.R.D. 165 (D.Minn.1991), a case relied on by Defendants. The *Filz* court concluded that subd. 5 was procedural for *Erie* purposes, that ignoring subd. 5 did not implicate any of the wrongs *Erie* was designed to prevent, and that *ex parte* interviews should be permitted. *See Filz*, 136 F.R.D. at 172–75.

The Court has reviewed *Filz*, and agrees with the *Gobuty* court that the *Filz* analysis is flawed for the following reasons: it analyzed the merits of the state law at issue, rather than determining whether applying state law could affect the choice of forum; it was based entirely in the court's conclusion that the state statute was procedural, thereby ignoring the question of whether applying the statute would significantly affect the litigation; and its refusal to conduct a broader inquiry resulted in too narrow a reading of the *Erie* doctrine. *See Gobuty*, 795 F.Supp. at 288. *See also Kuehn*, 686 F.Supp. at 234 (stating that *Erie* has evolved into a broad inquiry).

■ The Court will thus apply the *Gobuty* analysis to the instant case. Defendants argue that since *Gobuty* involved subd. 5, a provision which does not apply in this non-medical malpractice case, *Gobuty* is not relevant to the instant matter. The Court disagrees. The Court is merely applying the *Gobuty* analysis, which was first articulated in another non-medical malpractice case, to the instant facts. *See Kuehn*, 686 F.Supp. at 234–35 (deciding whether state or federal pleading rules apply to claims for punitive damages). Therefore, the Court's reliance on *Gobuty* is not misplaced.

First, the Court must determine whether Minn.Stat. § 595.02 subd. 1(d) conflicts with a federal rule of procedure on point. *See Gobuty*, 795 F.Supp. at 288. Defendants argue that since federal procedural rules are silent on the issue, nothing in the rules pre-

cludes informal *ex parte* physician interviews. (Def. Mem. Supp. Mot. at 3.) This is not same as finding a direct conflict with federal procedural rules. *See Hanna v. Plumer,* 380 U.S. 460, 470, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) (noting that when there is no federal rule on point, *Erie* commands enforcing state law). The Court concludes that there is no federal procedural rule directly on point, and thus proceeds to the next step of its analysis.

The Court must now determine if applying Minn.Stat. § 595.02 subd. 1(d), as limited by Minn. R. Civ. P. 35.04, has the potential to effect the choice of forum. *See Gobuty,* 795 F.Supp. at 288. The Court finds that permitting such *ex parte* interviews in federal court, when they are clearly proscribed in state court, would significantly impact a defendant's decision to remove a case to federal court. As the *Gobuty* court noted, Defendants' private access to Plaintiffs' physicians "could enable defendants to obtain statements that would later be used to impeach plaintiffs' experts. Because plaintiffs' counsel would not have been present at any informal interviews, any prior inconsistent statement would likely come as a complete surprise at trial. Defendants would thus receive a tactical advantage, which was recognized in *Wenninger,* by litigating ... in federal court as opposed to state court. This tactical advantage in and of itself justifies the application of [state law] in federal proceedings." *Id.* (citing *Kuehn,* 686 F.Supp. at 235). Second, the Court can find no justification for providing the physician-patient relationship less protection in federal court than in state court.

Third, "the practice of engaging in private conversations with plaintiff's physicians is not contemplated by the [federal] rules," and this Court declines to sanction such a practice. *Weaver v. Mann,* 90 F.R.D. 443, 445 (D.N.D. 1981). To this end, the Court notes its disagreement with Defendants' portrayal of Plaintiffs' physicians as "ordinary fact witnesses." Plaintiffs' physicians are in a unique and potentially precarious relationship with their patients. As discussed above, physicians are duty-bound to keep their patients' confidences in order to protect both themselves and their patients. *See Wen-*

*ninger,* 240 N.W.2d at 336–37. In addition, Defendants' portrayal is based on the faulty assumption that Plaintiffs' waivers are without limit. The Court has already determined that Plaintiffs only waived privilege to the extent delimited by Rule 35.04.

Lastly, the Court can find no other justification for extending subd. 1(d) to allow the interviews Defendants seek. The cases upon which Defendant relies can all be distinguished from the instant case. First, the Court has already determined that the *Filz* court conducted a flawed *Erie* analysis. Second, the instant case can be distinguished from *Thomsen v. Mayo Found.,* No. 4–84–1239, 1986 WL 9159 (D.Minn. Aug.20, 1986) because the Parties to this case have not agreed that the physician-patient privilege has been completely "abandoned." *See Thomsen,* 1986 WL 9159, at *2. Moreover, *Thomsen* was decided six years before *Gobuty,* the case which adopted the proper *Erie* analysis. Third, *Jenson v. Playtex Family Prod., Inc.,* No. 4–88–908, 1988 WL 235672 (D.Minn. Sept. 19, 1988) is a two paragraph order based completely on *Thomsen. See Jenson,* 1988 WL 235672, at *1. These are the only three District of Minnesota cases cited by Defendants.

Three other cases cited by Defendants can be distinguished not only because they are not binding in this jurisdiction, but also because the physician-patient privilege waivers discussed in the cases were not limited by rules such as Rule 35.04. *See Bryant v. Hilst,* 136 F.R.D. 487, 488 n. 1 (D.Kan.1991) (addressing Kansas statute which declared "there is *no* privilege" in an action in which the condition of the patient is at issue) (emphasis added); *Felder v. Wyman,* 139 F.R.D. 85, 87–88 (D.S.C.1991) (stating that there is no physician-patient privilege under South Carolina law, and noting that the concept of "qualified waiver" has been rejected in South Carolina); *Doe v. Eli Lilly & Co., Inc.,* 99 F.R.D. 126 (D.D.C.1983) (no mention of any state law or rule that limits waiver). Likewise, *In re Orthopedic Bone Screw Prod. Liab. Litig.,* MDL No. 1014, 1996 WL 530107 (E.D.Pa.) can be reconciled with the instant action. In *Orthopedic Bone Screw,* the MDL court determined that informal *ex parte* phy-

sician interviews should be allowed "as permitted by applicable state law." *Orthopedic Bone Screw,* 1996 WL 530107, at *2. In the instant case, the Court has determined that Minnesota law does not permit the interviews Defendants seek. Accordingly, this part of Defendants' motion is denied. *See Gobuty,* 795 F.Supp. at 289 n. 2 (listing, *inter alia,* other District of Minnesota cases which disallowed *ex parte* interviews).

### D. *Alternative Relief*

Pursuant to PTO 96, Defendants will have the opportunity to depose Plaintiffs' physicians. Defendants seek modification of PTO 96 in the event the Court denies Defendants' request to conduct *ex parte* interviews. The Court does not agree that the parameters of PTO 96 prejudice Defendants, and declines Defendants' offer to amend that order. Thus, this part of Defendant' motion is also denied.

**IT IS HEREBY ORDERED** that Defendants' Motion to Conduct *Ex Parte* Interviews of Plaintiffs' Treating Physicians [No Doc. No.] is **DENIED.**